Todd A. Bromberg (TB8212)
Wiley Rein LLP
1776 K Street N.W.
Washington, DC 20006
(202) 719-7000
(202) 719-7207 (facsimile)

Beth L. Kaufman (BK 7809)
David B. Gordon (
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
New York, NY 10165
(212) 661-5030
(212) 687-2123 (facsimile)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
PMC SPECIALTIES GROUP, INC.,
501 Murray Road
Cincinnati, OH 45217

            Plaintiff,

    against

KINETIC INDUSTRIES, INC.,
139-36 58th Avenue
Flushing, NY 11355

and

JOHN DOE CORPORATION,

    Defendants.
-----------------------------------------------------x

Case No.: ___CV_____( )

**2977**

TRAGER, J.

## **COMPLAINT**

Plaintiff PMC Specialties Group, Inc. ("PMCSG"), by and through the

undersigned counsel, alleges as follows:

1

## PARTIES

1.      Plaintiff PMCSG is a Delaware corporation with its principal place of business located at 501 Murray Road, Cincinnati, Ohio 45217.

2.      Upon information and belief, defendant Kinetic Industries, Inc. ("Kinetic") is a New York corporation with its principal place of business located at 139-36 58th Avenue, Flushing, N.Y. 11355.

3.      Upon information and belief, Defendant Joe Doe Corporation is a chemical manufacturer allegedly toll-producing saccharin in the United States for Kinetic.

## JURISDICTION

4.      Jurisdiction is properly exercised pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between and among the parties and the amount in controversy exceeds $75,000.

## VENUE

5.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(1) and (c) in that Kinetic resides in Queens County, New York, which is within this district, and pursuant to 28 U.S.C. § 1391(a)(2) in that the events or omissions giving rise to Plaintiff's claims primarily occurred in Queens County, New York.

2

## FACTS

6.     This case concerns saccharin, which is an artificial sweetener used in many consumer products, such as pharmaceuticals, toiletries, soft drinks, and foods.

7.     The world market for saccharin is dominated by seven companies. Five of those companies are in the People's Republic of China, and one is on South Korea. The seventh company is the sole U.S. producer, PMCSG.

8.     PMCSG has been the sole U.S. producer of saccharin for over 35 years. PMCSG also imports saccharin from China and other countries.

9.     In 2002, companies in the People's Republic of China were producing and exporting massive and increasing amounts of saccharin to the United States, and selling their products at unfairly low prices, thus injuring the U.S. industry.

10.     As the sole U.S. producer of saccharin, on July 11, 2002, PMCSG filed a petition with the United States Department of Commerce and the United States International Trade Commission, asking those agencies to investigate Chinese imports and to impose special antidumping duties to offset unfair pricing that was determined to exist. Commerce and the ITC conducted investigations, which examined the degree to which Chinese imports were being "dumped" or unfairly priced in the United States, and the effect of those unfair pricing practices on the U.S. industry.

11.     On July 9, 2003, following affirmative determinations by both the Department of Commerce and the International Trade Commission, the Department of Commerce published in the <u>Federal Register</u> an antidumping duty order imposing antidumping duties on all imports of saccharin from China.  The purpose and goal of the antidumping duty order was to restore fair pricing in the United States market by imposing special duties on imports equal to the degree to which imports were unfairly priced or dumped.  The duties imposed were significant, ranging up to 329.33 percent of the entered value of the imports.

12.     With that antidumping order in place, unfair pricing of Chinese imports was offset by the special duties, and PMCSG both produced and imported saccharin and sold it in the United States marketplace with the discipline of the order in effect.

13.     Imported saccharin from other countries such as South Korea, India and Israel, however, was not subject to antidumping duties.  As a result, Chinese producers who were subject to high antidumping duties began circumventing the antidumping duty order by transshipping their saccharin through third countries.  PMCSG attempted to combat circumvention through efforts at both the Commerce Department and the United States Bureau of Customs and Border Protection, with little success.  Circumvention has continued over the life of the order, and has greatly undermined the effectiveness of the antidumping duty order.

14.     Moreover, one of the major Chinese producers of saccharin, Shanghai Fortune Chemical Co., Ltd. ("Shanghai Fortune"), was able to reduce its individual duty level

4

to zero percent, thus gaining a significant competitive advantage over all other Chinese exporters whose rates remained as high as 329.33 percent ad valorem.

15.     In May 2009, as part of a review of the antidumping duty order on saccharin from China conducted pursuant to 19 U.S.C. § 1675(c) and 19 C.F.R. § 207 Subpart F, the United States International Trade Commission published an official decision concerning the state of the U.S. saccharin industry.  The ITC's report included its determination that PMCSG is the sole United States producer of saccharin.

16.     Despite PMCSG's efforts, circumvention of the order has continued and over time has rendered the order of increasingly little benefit to the U.S. industry.  Given the problems with circumvention, the order's effectiveness has been negated.  Rather than permit the U.S. industry to benefit from fair pricing, low-priced circumvented imports continue.  The order effectively restricts PMCSG's ability to source imports on a competitive basis, from all possible suppliers, because the tariff has the effect of increasing the cost of saccharin imported from China.  This increases the price paid by PMCSG for imported saccharin, which in turn increases the prices paid by its customers and, ultimately, U.S. consumers.

17.     Based on these changes in the circumstances surrounding the order, in May 2009 PMCSG determined that it would be better for the domestic industry (*i.e.*, PMCSG) and for U.S. purchasers and consumers to operate in a market without the antidumping order, in which all participants could compete and determine supply and pricing in the most efficient manner possible.

18.     Thus, on June 4, 2009, PMCSG filed a request with the United States Department of Commerce asking the Department to initiate and conduct a "changed circumstances review" pursuant to 19 U.S.C. § 1675(b) and 19 C.F.R. § 351.216, and revoke the antidumping duty order on imports of saccharin from China.

19.     In its request for changed circumstances review, PMCSG relied upon its confirmed status as the sole United States producer of saccharin, and requested that the Commerce Department conduct a proceeding to revoke the antidumping duty order, as permitted under the relevant statutory provisions and regulations.

20.     As the only U.S. producer of saccharin, PMCSG constitutes the entire domestic industry.

21.     Because it constitutes the entire domestic industry, no other domestic producer exists who could oppose PMCSG's request to revoke the antidumping duty on an expedited basis.

22.     Pursuant to its regulations, when initiating a changed circumstances review concerning potential revocation of an order, the Department of Commerce may simultaneously issue a preliminary determination to revoke the order.

23.     Because PMCSG is the only U.S. producer of saccharin for whose benefit the order could be maintained, and desires that the order be revoked, it requested that the Department of Commerce simultaneously initiate the requested review and issue a preliminary determination to revoke the antidumping duty order.  Under these

circumstances, absent legitimate opposition to the request, the Commerce Department ordinarily would proceed on this basis.

24.     Based on the date PMCSG filed its request for a changed circumstances review – June 4, 2009 – the Department of Commerce is required by its regulations to make a determination with respect to initiation of the changed circumstances review no later than July 20, 2009.

25.     On July 2, 2009, defendants Kinetic and John Doe Corporation submitted a letter to the Department of Commerce opposing PMCSG's request that the order be revoked.  In their letter, defendants claimed that they are U.S. producers of saccharin, and that PMCSG is no longer producing saccharin and thus does not have standing to request that the order be revoked.

26.     Based on PMCSG's extensive knowledge of the domestic and global saccharin market, Kinetic's and John Doe Corporation's claim that they are U.S. producer of saccharin is patently false.  This conclusion is also clear from the United States International Trade Commission's May 2009 decision finding that PMCSG is the sole U.S. producer.

27.     Kinetic and John Doe Corporation's newly minted claims that they are producers of U.S. saccharin have been made solely for the purpose of improperly interfering with the Department of Commerce's review, thereby keeping the antidumping order in place.

28.     On July 7, 2009, the Department of Commerce rejected Defendants' July 2, 2009 letter, because defendants had failed to include required certifications concerning the accuracy and completeness of their information and allegations.

29.     On July 9, 2009, defendants Kinetic and John Doe Corporation re-filed a revised letter with the Department of Commerce, opposing PMCSG's request that the order be revoked.

30.     The July 9, 2009 letter filed by Kinetic and John Doe Corporation included a certification signed by one Cheng Lu, President of Kinetic.

31.     Upon information and belief, Cheng Lu is the principal of a chemical trading company, Gibraltar Trading Corporation, which is located at the same address as Kinetic.

32.     Upon information and belief, Cheng Lu and Gibraltar are affiliated with Shanghai Fortune, and are significant importers of saccharin from Shanghai Fortune.

33.     In their letter, Kinetic and John Doe Corporation again intentionally misrepresented that they are U.S. producers of saccharin.

34.     In their letter, Kinetic and John Doe Corporation again intentionally misrepresented that PMCSG stopped production.

35.     Based on their intentional misrepresentations, Kinetic and John Doe Corporation have claimed status as interested parties pursuant to 19 U.S.C.

§ 1677(9)(C), and opposed revocation of the antidumping duty order on saccharin from China.

36.     Relying on their claim to be United States producers of saccharin, Kinetic and John Doe Corporation also requested that the Department of Commerce decline to issue a preliminary determination to revoke the order at the same time it initiates the changed circumstances review.

37.     Kinetic and John Doe Corporation are intentionally manipulating the administrative process to gain or maintain an unfair advantage in the marketplace, and are making false representations to the United States Department of Commerce to gain that advantage.

38.     Kinetic's and John Doe Corporation's act of filing as purported interested parties results in the Department of Commerce delaying its preliminary determination in the changed circumstances ruling until after July 20, 2009.  The effect of this delay -- which is likely to last several months -- is to artificially maintain duties on saccharin imported from China apart from that exported by Shanghai Fortune, which will allow Kinetic and John Doe Corporation to exact an artificially high price for their products, and which will interfere with PMCSG's ability to obtain saccharin and develop and establish business and economic relations with existing and/or prospective customers.

39.     Upon information and belief, Kinetic and/or John Doe Corporation have contacted purchasers of PMCSG saccharin products and informed them of the fact that they filed as interested parties in the Department of Commerce's changed

circumstances review and are thereby effectively delaying or preventing the revocation of the antidumping duty order.

40.     Those PMCSG customers understand that this act will delay and prevent the lifting of the antidumping order, which will keep prices for PMCSG's saccharin higher than that sold by companies that are not subject to the antidumping duty.

## COUNT I

## INTENTIONAL MISREPRESENTATION

41.     PMCSG repeats and realleges the allegations contained in paragraphs 1 through 40 above, as if fully set forth herein.

42.     PMCSG is the sole domestic producer of saccharin.

43.     Kinetic and John Doe Corporation are not domestic saccharin producers, and are aware that they do not qualify as interested parties under the definition of that term applied by the Department of Commerce pursuant to the Tariff Act of 1930, as amended.

44.     Kinetic and John Doe Corporation intentionally misrepresented to the Department of Commerce that they are domestic producers of saccharin in order to disrupt the Department of Commerce's changed circumstances review and delay revocation of the antidumping duty order on saccharin from China.

45.     Kinetic and John Doe Corporation were aware at the time of making their representations to the Department of Commerce that their assertions would result in a delay of the issuance of the preliminary revocation determination.

46.     Kinetic and John Doe Corporation made their intentional misrepresentations to the Department of Commerce for the purpose of delaying and disrupting the administrative process that will revoke the antidumping duty order on saccharin from China, rather than with any lawful purpose.

47.     By misrepresenting to the Department of Commerce that they are domestic producers of saccharin, Kinetic and John Doe Corporation have violated 18 U.S.C. § 1001.

48.     Kinetic and John Doe Corporation knew that PMCSG was a party that stood to benefit from the preliminary revocation determination and that the filing of their letter with the Department of Commerce would cause PMCSG to lose that benefit.

49.     Upon information and belief, the Department of Commerce has relied upon the representations made by Kinetic and John Doe Corporation by determining to delay the issuance of the preliminary revocation determination, and requiring the parties, including PMCSG, to prepare and submit data and information addressing multiple legal and factual issues.  Preparing this information requires PMCSG to incur significant expenses and costs.

50.     Kinetic's and John Doe Corporation's intentional misrepresentations have damaged PMCSG by delaying the issuance of the preliminary determination to

11

revoke the antidumping duty order, and thereby delaying revocation of the order itself.

51.     These intentional misrepresentations have delayed the transition to a marketplace where antidumping duties on Chinese saccharin have been removed, which is in PMCSG's commercial interest.

52.     The intentional misrepresentations made by Kinetic and John Doe Corporation have damaged PMCSG in an amount greater than $75,000.

## COUNT II

## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

53.     PMCSG repeats and realleges the allegations contained in paragraphs 1 through 52 above, as if fully set forth herein.

54.     PMCSG has actual contractual relationships with companies for the sale of saccharin.

55.     Upon information and belief, Kinetic and John Doe Corporation have advised PMCSG's actual customers of their trumped-up filing with the Department of Commerce and that this filing will essentially derail the Department's expedited review process and damage PMCSG's actual and prospective business relationships.

56.     Defendants Kinetic and John Doe Corporation have published these false statements with the intent of interfering with PCMSG's economic relationships with

these companies and harming PCMSG by influencing the companies' purchasing decisions with respect to saccharin.

57.     Defendants Kinetic and John Doe Corporation published these false statements with the intent to interfere with PCMSG's business and economic relationships by preventing it from forming/continuing business relationships.

58.     Defendants Kinetic's and John Doe Corporation's actions have damaged PCMSG in an amount greater than $75,000.

## COUNT III

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

59.     PMCSG repeats and realleges the allegations contained in paragraphs 1 through 58 above, as if fully set forth herein.

60.     PMCSG is currently engaged in developing prospective economic relations with a wide variety of U.S.-based purchasers and consumers of saccharin through long-term supply contracts as well as spot-market contracts.

61.     Upon information and belief, Kinetic and John Doe Corporation have advised PMCSG's actual and prospective customers of their trumped-up filing with the Department of Commerce and that this filing will essentially derail the Department's expedited review process.

62.     Defendants Kinetic and John Doe Corporation have published these false statements with the intent of interfering with PMCSG's prospective economic relationships with these companies and harming PMCSG by influencing the companies' purchasing decisions with respect to saccharin.

63.     Defendants Kinetic and John Doe Corporation have submitted false

13

statements to the Department of Commerce and made misrepresentations to companies with whom PMCSG seeks to enter economic relations, thus using wrongful means to interfere with PMCSG's prospective relationships with these companies.

64.     Defendants Kinetic and John Doe Corporation have damaged PMCSG's prospective economic relations with these companies because PMCSG's prices remain wrongfully and artificially inflated due to the antidumping order.

65.     Defendants Kinetic's and John Doe Corporation's actions have damaged PCMSG in an amount greater than $75,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff PMCSG demands that a judgment be entered in its favor:

(a) on its First Cause of Action for Intentional Misrepresentation, for compensatory damages in an amount to be determined at trial, together with punitive damages; for a declaration pursuant to 28 U.S.C. § 2201 that it is the sole U.S. producer of saccharin, that Kinetic and John Doe Corporation are not U.S. producers of saccharin, and that Kinetic and John Doe Corporation fraudulently misrepresented to the Department of Commerce that they are U.S. producers of saccharin; and for an injunction barring Kinetic and John Doe Corporation from further representing to PMCSG's actual and prospective customers that they are U.S. producers of saccharin or filing false statements with the Department of Commerce to further these misrepresentations.

(b) on its Second Cause of Action for Tortious Interference with Economic Relations, for compensatory damages in an amount to be determined at trial, together with punitive damages; and for an injunction barring Kinetic and John Doe Corporation

from tortiously and wrongfully interfering with Plaintiff's business relations with saccharin purchasers by circulating a letter/making claims fraudulently misrepresenting its status as a U.S. producer of saccharin.

(c) on its Third Cause of Action for Tortious Interference with Prospective Economic Relations, for compensatory damages in an amount to be determined at trial, together with punitive damages; and for an injunction barring Kinetic and John Doe Corporation from tortiously and wrongfully interfering with Plaintiff's prospective business relations with saccharin purchasers by circulating a letter/making claims fraudulently misrepresenting its status as a U.S. producer of saccharin.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury as to all issues so triable.

Dated July 10, 2009

Respectfully submitted,

By: *Todd Bromberg*
_____
Todd A. Bromberg (TB8212)
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel. (202) 719-7357
Fax  (202) 719-7049
tbromberg@wileyrein.com

Beth L. Kaufman (BK 7809)
David B. Gordon (DG 0010)
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
New York, NY 10165
Tel. (212) 661-5030
Fax  (212) 687-2123
bkaufman@schoeman.com

*Attorneys for PMC Specialties Group, Inc.*